UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) CHARLES A. SLAYDEN, JR., a/k/a "CJ"; (2) LEVENSON MERILUS,<br><br>Defendants | Criminal No. 19cr10189<br><br>Violations:<br><br>Count One: Conspiracy<br>(18 U.S.C. § 371)<br><br>Count Two: False Statements to Acquire Firearms from Licensed Dealer<br>(18 U.S.C. § 922(a)(6))<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)) |

INDICTMENT

General Allegations

At all times material to this Indictment:

1. Defendant CHARLES A. SLAYDEN, JR., a/k/a "CJ" ("SLAYDEN") was a resident of Boston, Massachusetts, and was not licensed to engage in the business of dealing in firearms.

2. Defendant LEVENSON MERILUS ("MERILUS") was a resident of Randolph, Massachusetts, and was not licensed to engage in the business of dealing in firearms.

3. Beginning no later than February 19, 2019, and continuing until at least March 30, 2019, SLAYDEN, MERILUS, and others known and unknown to the Grand Jury, conspired to purchase from a federally licensed firearms dealer, and to re-sell, no fewer than seven firearms.

4. SLAYDEN and MERILUS knew that they were not licensed to engage in the business of dealing in firearms.

1

5. SLAYDEN and MERILUS paid between approximately $200 and $330 in cash for each firearm they purchased from the federally licensed firearms dealer, and conspired to re-sell those firearms to individuals in Boston for approximately twice what they had paid, after which they agreed to share the profits.

### The Conspiracy and Its Object

6. It was the object of the conspiracy for SLAYDEN and MERILUS to unlawfully enrich themselves by purchasing firearms from a federally licensed firearms dealer for re-sale for profit, without being licensed to do so.

### Manner and Means of the Conspiracy

7. It was part of the conspiracy that SLAYDEN took orders, and collected payment, for firearms from others known and unknown to the Grand Jury.

8. It was further part of the conspiracy that SLAYDEN traveled with MERILUS to the federally licensed firearms dealer to purchase the firearms.

9. It was further part of the conspiracy that SLAYDEN directed MERILUS which firearms to purchase and provided him with the funds to purchase them.

10. It was further part of the conspiracy that MERILUS purchased the firearms, and disguised the true nature of the transaction by certifying on a Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473, Firearms Transaction Record, that he was the actual transferee/buyer of the firearms listed on the subject form, when, in fact, he was not.

11. It was further part of the conspiracy that, after the purchase of the firearms from the federally licensed firearms dealer, SLAYDEN paid MERILUS a portion of the profit from the anticipated re-sale of the firearms.

12.     It was further part of the conspiracy that, after the purchase of the firearms from the federally licensed firearms dealer, MERILUS transported the firearms in his car to locations in Boston as directed by SLAYDEN, for SLAYDEN to distribute to the actual buyers.

### Overt Acts

13.     In furtherance of the conspiracy and to accomplish its objectives, SLAYDEN and MERILUS committed the following overt acts, among others:

a. On or about February 23, 2019, SLAYDEN and MERILUS exchanged the following text messages:

> SLAYDEN: I collected so far we up about 250 or higher
> MERILUS: Alright f
> SLAYDEN: Like 250 profit but we projected to make 756 according to my math
> Don't make me look like clown with their bread

b. On or about February 23, 2019, SLAYDEN and MERILUS traveled together to a federally licensed firearms dealer, and MERILUS purchased two firearms.

c. On or about February 24, 2019, by text message, SLAYDEN sent MERILUS a photograph of a Ruger .40 caliber pistol.

d. On or about February 26, 2019, SLAYDEN and MERILUS traveled together to a federally licensed firearms dealer, and MERILUS purchased four firearms, including a Ruger .40 caliber pistol.

e. On or about March 8, 2019, SLAYDEN and MERILUS exchanged following text messages:

> SLAYDEN:    Yo this nigga got 1100
>             The him no
>             We can get 2 for like 600
>                     ***

>
> So take the deal
> Do you need cash tonight?

MERILUS: I don't need the cash but we could make it happen

f.  On or about March 9, 2019, SLAYDEN and MERILUS traveled together to a federally licensed firearms dealer, and MERILUS purchased two firearms.

g.  On or about March 15, 2019, SLAYDEN sent MERILUS the following text messages:

> I'm about to collect
> For tomorrow and I'm broke so
> You need a little sum ?
> I got 100 for you if you need it right now

h.  On or about March 16, 2019, MERILUS texted SLAYDEN, "Come around 1 I got to some something." SLAYDEN responded:

> Huh
> light please don't bs I had to handle sum last night but I got you money and there spending money
> You know the early the better
> Car problems but I'll be there

i.  On or about March 16, 2019, SLAYDEN and MERILUS traveled together to a federally licensed firearms dealer, and MERILUS attempted to purchase two firearms.

## COUNT ONE
## Conspiracy
## (18 U.S.C. § 371)

The Grand Jury re-alleges and incorporates by reference paragraphs 1-13 above.

The Grand Jury charges:

From on or around February 19, 2019 until March 30, 2019, in the District of Massachusetts, the defendants,

      (1) CHARLES A. SLAYDEN, JR., a/k/a "CJ"; and

      (2) LEVENSON MERILUS

did knowingly and willfully conspire with others known and unknown to the Grand Jury to commit an offense against the United States, that is, to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
False Statements to Acquire Firearms from Licensed Dealer
(18 U.S.C. § 922(a)(6))

The Grand Jury further charges:

On or around February 26, 2019, in the District of Massachusetts, the defendant

(2) LEVENSON MERILUS,

in connection with acquiring and attempting to acquire the following firearms:

a. Ruger, Model LC9, .9mm Pistol, Serial Number 323-63162;

b. Ruger, Model SR40C, .40 Caliber Pistol, Serial Number 345-40167; and

c. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HXP4293

from Four Seasons, a firearms dealer licensed under the provisions of Chapter 44 of Title 18, United States Code, did knowingly make false statements and representations to the firearms dealer, which statements were intended and likely to deceive the firearms dealer as to facts material to the lawfulness of such sale of the said firearms to the defendant under Chapter 44 of Title 18, in that the defendant did certify on a Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473, Firearms Transaction Record with respect to each of the above firearms, that he was the actual transferee/buyer of the firearms, when in truth and in fact, he was not.

All in violation of Title 18, United States Code, Section 922(a)(6).

## FIREARM FORFEITURE ALLEGATION
(18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 922, set forth in Counts 1 and 2 of this Indictment, the defendants,

(1) CHARLES A. SLAYDEN, JR., a/k/a "CJ"; and
(2) LEVENSON MERILUS

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), any firearm or ammunition involved in or used in any knowing commission of the offenses. The property to be forfeited includes, but is not limited to, the following:

   a. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HYJ1614;

   b. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HUN3917;

   c. Smith & Wesson, Model M&P Shield, .40 Caliber Pistol, Serial Number HVA4371;

   d. Ruger, Model LC9, .9mm Pistol, Serial Number 323-63162;

   e. Ruger, Model SR40C, .40 Caliber Pistol, Serial Number 345-40167;

   f. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HXP4293;

   g. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HXB7943;

   h. Smith & Wesson, Model M&P Shield, .9mm Pistol, Serial Number HXB7945;

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 924, and Title 28, United States Code, Section 2461.

A TRUE BILL

_____
FOREPERSON

_____
ELIANNA NUZUM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: JUNE 5, 2019
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK
6/5/19  @ 2:10pm